# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF ILLINOIS

-------------------------------------------------------------   X


IN RE YASMIN AND YAZ (DROSPIRENONE)      :   3:09-md-02100-DRH-PMF
MARKETING, SALES PRACTICES AND            :   MDL No. 2100
RELEVANT PRODUCTS LIABILITY               :
LITIGATION                                :   Judge David R. Herndon
                                              ORDER
-------------------------------------------------------------

**This Document Relates to:**

***Nadine Camara, et al., v. Bayer Corp., et
al.* Case No. 3:10-cv-20247**

***Stevie Fanning v. Bayer Corp., et al.* Case
No. 3:10-cv-20242**

***April Freeman-Hollenshead, et al., v.
Bayer Corp., et al.* Case No. 3:09-cv-20034**

***Stephanie Ivey v. Bayer Corp., et al.* Case
No. 3:09-cv-20003**

***Karen Knauer, et al., v. Bayer Corp., et al.*
Case No. 3:10-cv-20243**

***Jennifer Metzger, et al., v. Bayer Corp., et
al.* Case No. 3:10-cv-20246**

***Lekecia Milam v. Bayer Corp., et al.* Case
No. 3:10-cv-20245**

***Alicia Rhodes v. Bayer Corp., et al.* Case
No. 3:10-cv-20333**

***Heather Schroeder, et al., v. Bayer Corp.,***

*et al.* **Case No. 3:10-cv-20244**

*Diana Sheehan, et al., v. Bayer Corp., et al.* **Case No. 3:10-cv-20331**

*Dawn Voss v. Bayer Corp., et al.* **Case No. 3:09-cv-20004**

―――――――――――――――――――――――――

### I.    INTRODUCTION

The Court has numerous remand motions pending in its docket in actions (such as the above captioned member actions) involving a distributor defendant, McKesson Corporation ("McKesson"), that were originally brought in a California state court, removed to a California district court, and transferred to this Multidistrict Litigation ("MDL").   In some instances, the remand motions were docketed prior to transfer to this MDL, with the responsive briefing at various stages of completion.   In other instances, remand motions were docketed after the member action was transferred to this MDL.

The Court initially hoped to resolve the above captioned remand motions (and other similar motions still pending on the Court's docket) by ruling on one representative remand motion.   Thus, in May 2010, the Court considered one of the fully briefed remand motions and issued an order denying Plaintiff's motion to remand (3:10-cv-20095 Doc. 52).   In June 2010, the Court issued an order denying Plaintiff's motion to reconsider the denial of her motion to remand (3:10-cv-20095 Doc. 61).   After issuance of the remand Orders in May and June,

2

the Court delayed consideration of the remand motions pending in similarly situated member actions to allow the parties an opportunity to independently resolve issues pertaining to remand based on the principles discussed in the remand orders issued in May and June 2010.

Unfortunately, only a handful of member actions have been able to independently resolve the question of remand (filing notices of withdrawal of remand motion or stipulations of remand) (*See e.g.*, 3:10-cv-20241 Doc. 32 (parties consenting to remand action to state court based on principles announced in remand orders issued by the Court in May and June 2010)).   A majority of the parties in similarly situated member actions, however, have been unable to reach an agreement on the question of remand.   In these cases, many of the parties have filed additional responses and replies arguing for and against remand based on the remand orders the Court issued in May and June 2010.[1]

Presently, the Court is in the process of considering each pending remand motion and issuing orders resolving the questions raised therein.   This Order, addressing the above captioned member actions, is the first in what will be a series of orders addressing the remand motions pending in cases involving McKesson that were transferred from California District Courts.

---

[1] Because of the unique procedural background involved, the Court has given the parties some leeway with regard to the usual limitations on the filing of responses and replies.

3

## II.      BACKGROUND

### A.      McKesson Corporation

McKesson, a California citizen,[2] is a wholesale distributor of prescription medications that purchases YAZ/Yasmin and sells it to retail pharmacies.   McKesson's California citizenship is significant for two reasons. First, the above captioned actions were originally brought in California state court. Accordingly, the propriety of removal under the forum defendant rule must be considered.   Second, in some instances, the above captioned actions involve Plaintiffs who are also citizens of California, and thus, complete diversity is in issue. Defendants argue that the citizenship of McKesson should be ignored in all of the above captioned actions because McKesson has been fraudulently joined.

### B.      The Orders pertaining to remand issued in *Jankins v. Bayer Corp. et al.*, 3:10-cv-20095-DRH-PMF

Pursuant to discussions with leadership counsel during monthly conferences, the Court understood that the motions to remand to California state court were largely based on the same issues.   Accordingly, in an effort to conserve judicial resources and to reduce turnaround time, the Court elected to rule on one representative motion.   The Court hoped that this would allow the parties to

---

[2] McKesson is also a citizen of Delaware; however, McKesson's Delaware citizenship is not pertinent to the remand issues in the above captioned cases and is therefore not discussed in this Order.

4

independently resolve the remaining remand motions by filing stipulations or other pleadings based on the principles expressed in the Court's remand decision.

The representative motion the Court ruled on was filed in *Jankins v. Bayer Corp. et al.,* (3:10-cv-20095) ("*Jankins*").   In *Jankins*, the Plaintiff, a California citizen, originally brought her action in the California Superior Court, Riverside County, for damages related to a myocardial infarction allegedly caused by the drug marketed as Yaz (3:10-cv-20095 Doc. 1 ¶ 30).   Plaintiff named numerous Bayer entities (all non-California citizens) and McKesson.   Plaintiff's action was removed to the district court for the Central District of California based on diversity of citizenship (3:10-cv-20095 Doc. 1 pp. 2-4 ¶¶ 1-13).   The removing Defendants alleged that McKesson had been fraudulently joined, and therefore, its citizenship should be disregarded (3:10-cv-20095 Doc. 1 p. 4 ¶ 13).   Thereafter, the action was transferred to this MDL (3:10-cv-20095 Doc. 36).

Plaintiff filed a motion to remand to state court arguing that diversity jurisdiction did not exist because both Plaintiff and McKesson are California citizens (3:10-cv-20095 Doc. 45).   The Bayer Defendants responded in opposition, arguing that McKesson's citizenship should be disregarded for diversity purposes because McKesson was fraudulently joined (3:10-cv-20095 Doc. 49).   The Bayer Defendants' fraudulent joinder argument was twofold: First, they asserted that there was no reasonable possibility that McKesson, a distributor of pharmaceuticals, could be held liable under California law.   Second, they

5

contended, even if a claim could stand against McKesson, the Plaintiff's Complaint failed to plead sufficient facts against McKesson.

On May 14, 2010, the Court entered an order denying the *Jankins*' remand motion (3:10-cv-20095 Doc. 52).   As to the first argument, the Court found that a pharmaceutical distributor such as McKesson could be held liable under California law.   As to the second argument, the Court found that causation is a requisite element of any claim directed against McKesson and that to sufficiently allege causation Plaintiff must assert that McKesson supplied the pills that caused her alleged injuries.

Because the Plaintiff in *Jankins* failed to plead that McKesson supplied the subject drugs, the Court concluded that it had no choice but to find that McKesson had been fraudulently joined (3:10-cv-20095 Doc. 52).   In June 2010, the Court considered and denied Plaintiff's motion to reconsider the order denying remand (3:10-cv-20095 Doc. 61).   As the Court explained in its order denying Plaintiff's motion to reconsider:

> [T]o sufficiently allege a claim against McKesson, Plaintiff must allege that McKesson was an entity within the chain of distribution – put another way, Plaintiff must allege that McKesson supplied the subject matter drugs to the Plaintiff...Plaintiff's Complaint fails to do this. The Complaint merely alleges that McKesson was *a* distributor of the subject matter drugs...Alleging that McKesson was *a* distributor of the subject matter drugs is not the equivalent of alleging that McKesson was *the* distributor that supplied the drugs that allegedly caused Plaintiff's injuries.    Absent such an allegation, there can be no causal connection between McKesson and Plaintiff's alleged injuries and the Court must conclude that Plaintiff has not sufficiently pled a claim against McKesson.

6

(3:09-cv-20095 Doc. 61).

The Court also concluded that Plaintiff's boilerplate allegations as to "Defendants" did not sufficiently plead a claim against McKesson.   Throughout the Complaint, Plaintiff made allegations against "Defendants" generally (grouping McKesson with the Bayer Defendants), rather than directing allegations against McKesson specifically.   For example:

> The Defendants were in the business of researching, designing, developing, licensing, compounding, testing, producing, manufacturing, assembling, processing, packaging, inspecting, labeling, warranting, marketing, promoting, advertising, distributing, selling, and/or introducing into interstate commerce either directly or indirectly through third parties or related entities, the [subject matter drugs].

As the Court explained in its Order on Plaintiff's motion for reconsideration, "the only part of this generic allegation that could possibly relate to McKesson is the assertion as to the 'distributing, selling, and/or introducing into interstate commerce' of the subject matter drugs" (3:09-cv-20095 Doc. 61).   The Court concluded that this type of generic allegation is not sufficient (3:09-cv-20095 Doc. 61).

**C.   Recent filings with regard to the above captioned member actions**

On September 3, 2010, the Bayer Defendants filed a memorandum in opposition to the remand motions filed in the above captioned cases.[3]   The

---

[3] The memorandum in opposition states that the Bayer Defendants requested that Plaintiffs withdraw their pending remand motions and dismiss McKesson based on the grounds articulated in *Jankins.*   Plaintiffs, however, declined to do so and, as a result, the Bayer Defendants filed a memorandum in opposition to the motions to

7

memorandum contends that the remand motions pending in the above captioned actions should be denied because, like the Complaint in *Jankins*, Plaintiffs' respective Complaints fail to allege that McKesson supplied the pills that the Plaintiffs ingested.

In addition, Defendants argue that for certain Plaintiffs California substantive law does not govern the issue of McKesson's liability.   Specifically, the Bayer Defendants contend that (1) the laws of Plaintiffs' respective states of citizenship govern resolution of McKesson's liability (because that is where each alleged injury occurred) and (2) Plaintiffs domiciled in Colorado, Georgia, Illinois, Louisiana, Ohio, Tennessee, Texas, and Utah cannot maintain a cause of action against McKesson because, unlike California, these states do not impose liability on distributors such as McKesson.

On September 7, 2010, five of the above captioned member actions filed notices of intent to withdraw, in whole or in part, their remand motions.   In addition, several Plaintiffs in the above captioned member actions have filed (virtually identical) replies in support of their motions to remand arguing that 1) under California law Plaintiffs need not plead that McKesson distributed the pills ingested by the Plaintiffs and 2) other courts have not required that Plaintiffs plead that McKesson distributed the subject pills (*See* 3:10-cv-20333 Doc. 35; 3:10-cv-20331 Doc. 35).

---

remand pending in the above captioned member actions.

8

**D.    Governing substantive law**

1.    <u>Non-California Plaintiffs</u>

As noted by Defendants, some of the pending remand motions involve Plaintiffs that reside in (and were presumably injured in) states other than California.   As to the allegations brought by the non-California Plaintiffs, the substantive law of a state other than California likely governs resolution of whether McKesson is subject to liability under state law.   Accordingly, for some Plaintiffs, the portion of the *Jankins*' Remand Order addressing whether McKesson is subject to liability under California law will be immaterial.

2.    <u>Conflict of Laws Rules</u>

Generally, a federal court sitting in diversity will apply the conflict of laws rules of the state where the Court sits.   *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941) (state conflict of laws rules constitute substantive law for *Erie* purposes, so that a federal court in applying state substantive law must apply the law where the court sits).   Thus, at first glance, it appears the Court would apply Illinois conflict of laws rules.[4]   However, when a diversity case is transferred by the multidistrict litigation panel, the substantive law applied is that of the jurisdiction from which the case was transferred, in this case California.

---

[4] The Bayer Defendants apply Illinois conflict of laws rules.   In addition, the Bayer Defendants contend that if California conflict of laws rules govern the result is the same (i.e. both Illinois and California would find that the law of the State where the injuries occurred governs).

9

*See Chang v. Baxter Healthcare Corp.*, 599 F. 3d 728, 732 (7th Cir. 2010).   *See also Barron v. Ford Motor Co. of Canada Ltd.*, 965 F.2d 195, 197 (noting that when a case is transferred on grounds of convenience, the transferee court must apply the conflict of laws rules of the transferor jurisdiction whether the defendant or the plaintiff requested the transfer).   Accordingly, the Court finds that, in the above captioned cases, California choice of laws rules govern.

       3.    <u>Conflict of laws analysis is not necessary at this time</u>

      Applying California choice of laws rules, the Court would next determine whether each Plaintiff's claims are governed by the substantive law of California or the substantive law of another state (such as the law of the state where the injury occurred) and whether McKesson is subject to liability under the governing substantive law.   The Court, however, need not undertake a lengthy choice of law analysis at this time because none of the Complaints in the above captioned actions assert that McKesson supplied the actual pills ingested by the Plaintiffs.

      As is explained more fully below, establishing that the alleged tortfeasor manufactured, supplied, sold, distributed or was in some way responsible for the allegedly injurious product is a threshold requirement for imposing liability on McKesson.   This is so regardless of which state's substantive law governs and regardless of the theory of recovery.   Accordingly, pursuant to California's pleading rules (requiring that a plaintiff plead every fact he or she must prove), even assuming McKesson is subject to liability under the governing

10

substantive law, the Court would have no choice but to find (as it did in *Jankins*)

that McKesson has been fraudulently joined.

**E.      Necessity of Alleging Causation as to McKesson**

      1.           <u>California Pleading Standards</u>

        "In a complaint, the plaintiff must allege every fact that he or she must

prove."   *Hughes v. Western MacArthur Co*. (1987) 192 Cal. App. 3d 951, 956, 237

Cal. Rptr. 738 (Cal. App. 1987).   *See also* California Code Civ. Proc., § 425.10,

subd. (a)(1) ("A complaint must contain a statement of the facts constituting the

cause of action in ordinary and concise language."); *Careau & Co. v. Security*

*Pacific Business Credit, Inc.*, 272 Cal. Rptr. 387, 396-397, 222 Cal. App. 3d 1371,

1390-1391 (Cal. App. 1990) ("A complaint must allege the ultimate facts necessary

to the statement of an actionable claim."): *In re Eskridge's Estate*, 51 Cal. App. 2d

634, 635, 125 P.2d 527 (Cal. App. 1942) (Under California Pleading standards,

every ultimate fact required to be proved to sustain a cause of action must be

alleged).   Accordingly, if causation is a requisite element or a fact that must be

proved (under the governing substantive law), then California pleading standards

require that the complaint contain an allegation of causation, in this case that

McKesson supplied the subject drugs.   Absent such an allegation, Plaintiffs have

failed to state a cause of action against McKesson.

11

2.      Causation is a requisite element of any claim brought against McKesson

The Plaintiffs in the above captioned actions bring product claims premised on a variety of theories including strict liability, negligence, breach of implied and express warranties, deceit by concealment, and negligent misrepresentation.   Assuming without deciding that a distributor such as McKesson would be subject to liability under the governing substantive law, the imposition of liability, under any theory of recovery, depends upon a showing that the defendant manufactured, sold, supplied, or was in some way responsible for the product that is alleged to have caused the plaintiff's injuries.   *See* Products Liability: Necessity and Sufficiency of Identification of Defendant as Manufacturer or Seller of Product Alleged to Have Caused Injury, 51 A.L.R.3d 1344, § 2(a) ("Regardless of the theory which liability is predicated upon, whether negligence, breach of warranty, strict liability in tort, or other grounds, it is obvious that to hold a producer, manufacturer, or seller liable for injury caused by a particular product, there must first be proof that the defendant produced, manufactured, sold, or was in some way responsible for the product") (footnotes omitted); American Law of Products Liability 3d § 5:1 ("a threshold requirement for a products liability action is that the plaintiff identify the manufacturer or supplier responsible for placing the injury-causing product into the stream of commerce; this is the traditional requirement that plaintiff establish causation.")

12

Depending upon the outcome of a choice of law analysis under California choice of law rules, the claims of the Plaintiffs in the above captioned actions would be governed by the substantive law of California, Georgia, Nevada, Oklahoma, Utah, Tennessee, Arizona, Louisiana, Connecticut, New York, Texas, Ohio, or Illinois.[5]   Under the substantive governing law in any of these states, causation will be a requisite element of Plaintiffs' claims.   *See e.g., Winsosr v. Glasswerks PHX, L.L.C.,* 204 Ariz. 303, 312 (Ariz. App. 2003) (deferring to the legislature the issue of whether to adopt "product line" and "continuity of enterprise" exceptions to the general rule against successor liability and stating that a "fundamental tenet of [Arizona] products liability law is that compensation for injury is tied to those who have a causal connection to placing the product into the stream of commerce"); *DiCola v. White Bros. Performance Products, Inc.,* 158 Cal. App. 4th 666, 677, 69 Cal. Rptr. 3d 888, 898  (Cal. App. 2008) ("As a general rule, a plaintiff claiming to have been injured by a defective product must prove that the defendant's product, or some instrumentality under the defendant's control, caused his or her injury."); *Sindell v. Abbott Laboratories,* 26 Cal. 3d 588, 597-598, 607 P.2d 924, 928, 163 Cal. Rptr. 132, 136  (Cal. 1980) ("as a general rule, the imposition of liability depends upon a showing by the plaintiff that his or her

---

[5]  The Plaintiffs who are citizens of Colorado (and whose claims may be governed by the substantive law of Colorado) have withdrawn their motions to remand and have voluntarily dismissed McKesson (3:10-cv-20242 Doc. 41; 3:10-cv-20242 Doc. 42; 3:10-cv-20243 Doc. 43; 3:10-cv-20243 Doc. 44; 3:10-cv-20244 Doc. 36; 3:10-cv-20244 Doc. 37).   Accordingly, the Court does not review the substantive law of Colorado here.

injuries were caused by the act of the defendant or by an instrumentality under the defendant's control.   The rule applies whether the injury resulted from an accidental event or from the use of a defective product.") (internal citations omitted); *Douglas v. Smith,* 578 F.2d 1169, 1171-1172 (5th Cir. 1978)(under Georgia law, gas supplier not subject to liability for damages arising from gas explosion absent evidence that gas delivered by supplier was the gas that exploded); *Sox v. Carrolton Coca-Cola Bottling Co.,* 59 Ga. App. 367 (Ga. App. 1939) (in action against bottling company for injuries caused by substance in bottled beverage purchased at drug store, plaintiff failed to state a cause of action in absence of showing that beverage was bottled or marketed by bottling company); *Smith v. Eli Lilly & Co.,* 137 Ill.2d 222, 232-233 (Ill. 1990) (in product liability actions, to recover under strict liability or negligence plaintiff "must establish some causal relationship between the defendant and the injury-producing agent"); *Aymond v. Texaco, Inc.,* 554 F.2d 206, (C.A. La. 1977) (affirming lower court's directed verdict in favor of manufacturer and noting that manufacturer could not be held liable for worker's injuries where there was no evidence that defective product was manufactured by defendant)**;** *Desnoyers v. Wells*, 4 Conn. App. 666 (Conn. App. 1985) (affirming grant of summary judgment in favor of defendant on plaintiff's claims for products liability, negligence and breach of warranty where defendant did not manufacturer, sell, or distribute the product in question); *Rivera v. Philip Morris, Inc.,* 125 Nev. 18 (Nev. 2009) (declining to adopt heeding presumption in failure to warn product liability action because plaintiff has burden

14

as to element of causation in strict product liability cases); *Price v. Blaine Kern Artista, Inc.*, 111 Nev. 515, 518 (Nev. 1995) (causation is germane to both negligence and strict tort liability); *Shoshone Coca-Cola Bottling Co. v. Dolinski*, 82 Nev. 439, 443 (Nev. 1966) (adoption of strict products liability does not abrogate requirement that plaintiff establish defendant caused alleged injury)**;** U.S.—*In re Rezulin Products Liability Litigation*, 133 F. Supp. 2d 272 (S.D. N.Y. 2001) (In any products liability action, the plaintiff must establish a connection, however indirect, between the defendant and the defective product that caused plaintiff's injuries); Ohio Rev. Code § 2307.73 (expressly requiring proof that a defendant manufacturer produced the actual defective product that caused the plaintiff's injury); *Sutowski v. Eli Lilly & Co.*, 82 Ohio St. 3d 347, 351 (Ohio 1998) ("Ohio common law has long required a plaintiff to prove that a particular defendant caused his injury through negligence"); *Case v. Fibreboard Corp.*, 743 P.2d 1062 (Okl. 1987) (disapproving of "market share" liability theory and declining to dispense with requirement under Oklahoma law that plaintiff prove a link of causation between injury and a particular product in the asbestos context); *Wood v. Eli Lilly & Co.,* 38 F.3d 510 (10th Cir. 1994) (product liability action involving prescription drug DES noting the necessity of causation under Oklahoma law and concluding that Oklahoma law would not allow abrogation of the element of causation); *Davis v. Yearwood*, 612 S.W.2d 917 (Tenn. App. 1980) (complaint against all possible manufacturers, sellers, distributors, and the like of all possible products that could have caused plaintiffs' injuries, wherein no specific product or entity was identified, court

15

affirmed dismissal for failure to allege facts showing the moving defendant caused or contributed to plaintiffs' injuries); *In re Allied Chemical Corp.*, 227 S.W.3d 652, (Tex. 2007) (plaintiffs have the obligation to plead and prove how they were injured and by whom; they cannot simply file suit against all possible defendants and insist that the defendants prove otherwise); *Mission Petroleum Carriers, Inc. v. Solomon*, 106 S.W.3d 705, 710 (Tex.2003) (specific causation as an essential element of product liability case under any theory of recovery-strict liability, negligence, or breach of warranty); *Yirak v. Dan's Super Mkts., Inc.*, 188 P.3d 487, 489 (Utah App. 2008) ("passive retailers," those who do not participate in the design, manufacture, engineering, testing, or assembling of a product," are not subject to liability for product defects when the manufacturer is named as a party in the action) (internal citations omitted).

Thus, in the above captioned cases, regardless of the governing substantive law and regardless of the theory of recovery employed, causation is a requisite element of the Plaintiffs' claims against McKesson.   Therefore, under California pleading standards, Plaintiffs' Complaints must allege causation, i.e. that McKesson was in some way responsible for the pills that caused Plaintiffs' alleged injuries.   The fact that pleadings are to be liberally construed[6] does not dispense with this requirement.   *See Hughes v. Western MacArthur Co*., 192 Cal. App. 3d 951, 956 (Cal. App. 1987) (requirement of liberal construction "does not relieve [a

_____

[6] *See* Cal. Civ. Pro. Code § 452 (allegations in a complaint are to be "liberally construed, with a view to substantial justice between the parties").

16

plaintiff] of the obligation to plead some allegation from which [the court] may construe a legal connection between the party that injured [the plaintiff] and the party whom [the plaintiff] seeks to hold liable for [the plaintiff's] injury").   *Cf.* *Bockrath v. Aldrich Chemical Co., Inc.* 21 Cal.4th 71, 81, 980 P.2d 398, 405, (Cal. 1999) ("The law cannot tolerate lawsuits by prospecting plaintiffs who sue multiple defendants on speculation that their products may have caused harm over time through exposure to toxins in them, and who thereafter try to learn through discovery whether their speculation was well-founded."); *Oddone v. Superior Court* 179 Cal. App. 4th 813, 821-822, 101 Cal. Rptr. 3d 867, 872-873 (Cal. App. 2009) (discussing the policy concerns raised in *Bockrath*, specifically "overbroad litigation," and concluding that plaintiff's claims were "palpably inadequate" because plaintiff failed to allege a sufficient causal link between the defendant and the alleged harm").[7]

**F.    Sufficiency of pleading that McKesson *may* have distributed the subject drugs**

Some of the Plaintiffs in the above captioned actions have alleged that in California, it is enough that McKesson *may* have distributed the subject drugs

---

[7] *Odone* and *Bockrath* are distinguishable from the above captioned actions in certain respects.   For example, the cases deal specifically with injury resulting from exposure to toxins over time.   In addition, the complaint in *Odone* was insufficient because the plaintiff failed to identify the product that caused her alleged injury (here Plaintiffs have failed to allege that McKesson supplied the product that caused her alleged injury).   Nonetheless, the policy considerations regarding the necessity of pleading causation are instructive.

17

(*See* 3:10-cv-20333 Doc. 35 p. 3; 3:10-cv-20331 Doc. 35 p. 3).   The Plaintiffs that assert this claim rely, in part, on *Childs v. State of California* 144 Ca. App.3d 155, 161 (Ca. Ct. App. 1st Dist. 1983).   This case is simply not applicable.

In *Childs*, the California Appellate Court addressed whether use of the term "on or about" when pleading dates constitutes a proper pleading.   In that case, the date of  deposit  in the mail was the crucial date because it triggered the statute of limitations.   The plaintiff alleged a deposit date of "on or about" June 10, 1980. The court noted that the lack of a more specific date was "quite likely the result of appellant's present ignorance concerning that pivotal fact, which, if known at all, [was] presumptively within respondent's knowledge." The court concluded that the "[s]ince the appellant's complaint would be deemed timely filed if the notice had been deposited in the mail even one day after the date affixed to it by respondent, we consider the pleading of 'on or about' June 10, 1980, sufficient to withstand a general demurrer, as it reveals only that plaintiff's action  *may*  be barred."   This narrow fact specific holding regarding use of the term "on or about" does not abrogate a plaintiff's obligation to plead the facts that constitute a cause of action.

Plaintiffs also rely on various district court opinions that disagree with the Order issued by this Court in *Jankins*.   As the Court has explained in previous decisions, the opinions of other district courts are certainly not binding on this Court.   Moreover, for the reasons discussed in this Order, the Court respectfully disagrees with the contention that Plaintiffs need not allege that McKesson supplied the subject drugs.

18

As noted, in California, "as a general rule, the imposition of liability depends upon a showing by the plaintiff that his or her injuries were caused by the act of the defendant or by an instrumentality under the defendant's control. The rule applies whether the injury resulted from an accidental event or from the use of a defective product." *Sindell v. Abbott Laboratories*, 26 Cal. 3d 588, 597-598, 607 P.2d 924, 928, 163 Cal. Rptr. 132, 136  (Cal. 1980) *cert. denied*, 449 U.S. 912 (1980) (internal citations omitted).   There are, however, exceptions to the general rule.   *See Id* at 598 (noting that, in California, there are several alternative bases for imposing liability on a defendant when a plaintiff cannot identify the particular defendant that manufactured the harmful product).

The alternative bases for imposing liability when a plaintiff cannot establish causation were thoroughly explored by the California Supreme Court in *Sindell v. Abbott Laboratories*, 26 Cal.3d 588, 597-598, 607 P.2d 924, 928, 163 Cal.Rptr. 132, 136  (Cal., 1980).   In *Sindell* the plaintiffs, a class of daughters who were exposed to the drug diethylstilbesterol ("DES") which their mothers ingested during pregnancy, brought an action against 11 drug companies and Does 1 though 100 for birth defects caused by their mothers' ingestion of DES during pregnancy. The plaintiffs' claims were problematic because approximately 200 companies manufactured DES and the Plaintiffs could not identify which drug company supplied the particular DES ingested by their mothers.   *Id*., 163 Cal. Rptr. at 132-139, 607 P.2d at 925-931.

As the California Supreme Court explained, under traditional tort

19

theories, to state a cause of action the plaintiffs had to allege that the defendants were in some way responsible for the DES ingested by their mothers.   Because the plaintiffs could not meet this requirement, the court addressed whether the plaintiffs could maintain their claims using alternative theories of causation.   *See e.g.,* 597-603 (discussing the "alternative liability" theory of *Summers v. Tice*, which requires joinder of "all the parties who were or could have been responsible for the harm to the plaintiff;" and finding that the theory could not be employed because the plaintiffs had named only a portion of the approximately 200 drug companies that manufactured DES – thus, there was no rational basis to infer any one of the named defendants was the responsible entity); *Id.* at 604-606 (finding that the complaint failed to state a claim based upon "concert of action"); *Id.* at 607-610 (discussing but declining to apply the doctrine of "industry wide liability"); *Id.* at 610-613 (establishing "market share" liability for cases involving fungible goods where the plaintiff joins a "substantial share" of the appropriate market as defendants).

    First, the Court notes that the existence of these alternative theories of causation necessarily negates the argument that it is enough to allege that McKesson "might" have supplied the subject drugs.   If might, maybe, and could-have-been were sufficient grounds for imposing liability, then complex alternate theories of causation would be unnecessary.   That is, if alleging that a defendant *might* have supplied the harmful product was sufficient, then in cases such as *Sindell* there would be no causal gap to fill and the court would have no

20

reason to employ alternative theories of causation.   Second, nothing in Plaintiffs'

Complaints indicates that they are attempting to allege any alternative theory of

causation.[8]   The bottom line is, the Complaints in the above captioned cases fail to

bring sufficient allegations as to McKesson under any traditional tort theory

(because no causal link is alleged) or under any of the alternative theories of

causation discussed above.[9]   Accordingly, the Court has no choice but to conclude

that there is no reasonable possibility that a state court would find that the

Complaints, in their present condition, state a cause of action against McKesson.[10]

---

[8]  In fact, Plaintiffs have not even argued that they are attempting to allege an
alternative theory of causation.

[9]  The Court offers no opinion as to whether any of the alternative theories of
causation discussed herein could be properly employed under the circumstances of
these cases.   In addition, the Court offers no opinion as to whether any of the
alternative theories of causation recognized in California could be employed by the
Plaintiffs with claims governed by the substantive law of a state other than
California.   *See e.g., Sutowski v. Eli Lilly   Co.*, 82 Ohio St. 3d 347 (1998)
(considering and rejecting market share liability and noting that a number of courts
have considered and rejected market share liability).

[10]  In some of the above captioned cases, Plaintiffs have argued that denial of
remand will "foreclose Plaintiffs from ever pursuing the merits of their claims
against McKesson" (*See e.g.*, 3:10-cv-20333 Doc. 35 p. 3).   The Court notes
nothing in this Order bars Plaintiffs from seeking leave to bring proper claims (if
they can) against McKesson.   Moreover, nothing in this order prevents Plaintiffs
from seeking leave to join McKesson as a necessary party should discovery reveal
that McKesson did in fact supply the subject drugs (assuming amendment would
not be futile considering the governing substantive law).   Plaintiffs have also argued
that "justice would best be served by allowing Plaintiffs the benefit of full discovery
into their potential claims against McKesson" (*See e.g.*, *Id.*).   This argument
implies that the Plaintiffs cannot presently identify McKesson as the supplier of the
subject drugs.   If this is the case, it seems the proper course of action would have
been for Plaintiffs to utilize California's Doe pleading standards.   *See Bernson v.
Browning-Ferris Industries*  7 Cal. 4th 926, 937 (Cal. 1994) ("Where the identity of
at least one defendant is known, for example, the plaintiff must avail himself of the
opportunity to file a timely complaint naming Doe defendants and take discovery.").

21

Because Plaintiffs have failed to bring sufficient allegations as to McKesson, the

Court need not address (1) the choice of law issues and (2) whether the governing

substantive law imposes liability on distributors such as McKesson.

**E.     Severance of fraudulently joined claims**

In their September 3, 2010 Memorandum in Opposition to Remand,

the Bayer Defendants note that in three of the above captioned cases (*Camara*,

*Metzger*, and *Schroeder*) some of the Plaintiffs' claims are governed by California

law and some of the Plaintiffs' claims are governed by the laws of other states.

Thus, considering the Court's conclusion in *Jankins*, the laws governing some of

Plaintiffs' claims permit liability for pharmaceutical distributors (i.e. the laws of

California).   However, the laws governing other Plaintiffs' claims (the laws of

Colorado, Georgia, Illinois, Louisiana, Ohio, Tennessee, Texas, and Utah) arguably

do not permit such liability.   Defendants contend that, as to these three actions, if

---

*See also* California Code of Civil Procedure section 474 ("When the plaintiff is
ignorant of the name of a defendant, he must state that fact in the complaint, …and
such defendant may be designated in any pleading or proceeding by any name, and
when his true name is discovered, the pleading or proceeding must be amended
accordingly…"); California Code of Civil Procedure section 583.210 (allowing three
years to discover the identity of and serve the Doe defendant).   *See also Bockrath
v. Aldrich Chemical Co., Inc*.   21 Cal. 4th 71, 81, 980 P.2d 398, 405 (Cal. 1999)
("If plaintiffs do not have a sufficient basis to allege that a particular internalized
injury-causing toxin was manufactured or supplied by a specific person or entity,
their complaints must name Doe defendants, availing them of that statute's
protection against the statute of limitations until they can identify the defendants
and name them by their true names.") (internal citations omitted)).   The Court
notes, however, that *California's* Doe pleading practice is likely substantive and
unavailable to the Plaintiffs whose claims are governed by the substantive law of a
state other than California.   *See Brennan v. Lermer Corp*., 626 F. Supp. 926,
930-931 (N.D. Cal. 1986) (concluding that California's Doe pleading procedures are
"'substantive' both in purpose and effect").

22

the Court does not deny remand outright for failure to allege that McKesson supplied the subject drugs, "the claims of the Plaintiffs (who did not fraudulently join McKesson i.e., those from California) should be severed and remanded; the claims of the Plaintiffs that Defendants assert did fraudulently join McKesson (i.e., those Plaintiffs whose claims are governed by the law of a state that would not impose liability on a distributor defendant) should remain in federal court" *(see e.g.*, 3:10-cv-20333 Doc. 30 p. 17).

Because the Court is denying remand for failure to allege that McKesson supplied the subject drugs it need not consider this alternative argument.   This argument, however, may be considered by the Court in evaluating the remand motions pending in member actions not included in this Order.

### III.   ANALYSIS OF INDIVIDUAL PENDING MOTIONS

**A.   <u>This Portion of the Decision Relates to</u>:**

- ***April Freeman-Hollenshead, et al. v. Bayer Corp., et al.,* 3:09-cv-20034-DRH-PMF**

- ***Stephanie Ivey v. Bayer Corp., et al.*, 3:09-cv-20003-DRH-PMF**

- ***Fanning v. Bayer Corporation et al.,* 3:10-cv-20242-DRH-PMF**

- ***Knauer et al v. Bayer Corporation et al.,* 3:10-cv-20243-DRH-PMF**

These actions were originally brought in San Francisco Superior Court against numerous Bayer entities and McKesson (3:10-cv-20242 Doc. 14 p. 3; 3:10-20243 Doc. 15).   None of the Plaintiffs is a California citizen (*See*

23

3:10-cv-20242 Doc. 1 p. 15 (Plaintiff Fanning is a citizen of Colorado); 3:10-20243 Doc. 1 p. 13 ¶ 2 (in this multi-plaintiff action all of the Plaintiffs are citizens of Colorado); 3:09-cv-20003 Doc. 1-1 p. 9 ¶ 2 (Plaintiff Stephanie Ivey is a resident of Georgia); 3:09-cv-20034 Doc. 1 p. 12¶ 2 (Plaintiffs April Freeman-Hollenshead and Michael C. Hollenshead are residents of Louisiana)).   None of the Bayer Defendants is a citizen of California, Georgia, Colorado, or Louisiana.   The parties do not dispute that complete diversity exists in each case.

On September 7, 2010, the Plaintiffs in the above captioned actions filed notices of withdrawal of their motions to remand to state court (3:09-cv-20003 Doc. 85; 3:09-cv-20034 Doc. 58; 3:10-cv-20242 Doc. 41; 3:10-cv-20243 Doc. 43). On September 10, 2010 the parties in the above captioned actions filed stipulations of dismissal as to McKesson.   In light of the above, the Court **ORDERS** as follows:

1.   The motion to **remand** in ***Ivey* (3:09-cv-20003 Doc. 17)** is **denied** as **moot**.

2.   The motion to **dismiss** in ***Ivey* (3:09-cv-20003 Doc. 20)** is **denied** as **moot**.

3.   The motion to **remand** in ***Freeman-Hollenshead* (3:09-cv-20034 Doc. 10)** is **denied** as **moot**.

4.   The motion to **remand** in ***Fanning* (3:10-cv-20242 Doc. 14)** is **denied** as **moot.**

5.   The motion to **remand** in ***Knauer* (3:10-cv-20243 Doc. 15)** is **denied** as **moot.**

24

6.      Further, the Court **directs** the **Clerk of the Court** to **terminate** McKesson as a party defendant in ***Fanning*** **(3:10-cv-20242);** ***Knauer*** **(3:10-cv-20243);** ***Freeman-Hollenshead*** **(3:09-cv-20034);** and ***Ivey*** **(3:09-cv-20003).**

 

B.      <u>This Portion of the Decision Relates to</u>:

*Dawn Voss v. Bayer Corp., et al.* Case No. 3:09-cv-20004

1.      **Background**

This action was originally filed in San Francisco Superior Court against numerous Bayer entities and McKesson.   The Plaintiff in this action is a citizen of Illinois (3:09-cv-20004 Doc. 1 p. 7 ¶ 2).   None of the Bayer Defendants is a citizen of California or Illinois.   McKesson is a California citizen.   The parties do not dispute that complete diversity exists in this case.   Plaintiff in her motion to remand argues that remand is required because McKesson, a California citizen, was properly joined and served prior to removal (i.e., the forum defendant rule) (*See* 3:09-cv-20004 Doc. 17).

Defendants initial response in opposition to Plaintiff's motion to remand argues that the Bayer Defendants removed this action prior to service on McKesson and thus removal was proper (3:09-cv-20004 Doc. 28).   On September 3, 2010, the Bayer Defendants filed a second memorandum in opposition to Plaintiff's motion to remand arguing that remand should be denied because (1) the Complaint does not allege that McKesson supplied the subject drugs and/or (2) The

25

action is governed by the law of Illinois and Illinois law shields non-manufacturer suppliers from liability in product actions (3:09-cv-20004 Doc. 84).

### 2.   Analysis

Section 1441(b) limits removal jurisdiction in diversity cases, and provides that "such action[s] shall be removable *only* if none of the parties in interest properly joined *and served* as defendants is a citizen of the State in which such action is brought."   28 U.S.C. § 1441(b) (emphasis added).   Put another way, if diversity jurisdiction exists, only a "joined *and served*" resident prevents removal. Accordingly, in each of these cases, the forum defendant rule is only applicable if McKesson was joined *and served* at the time of removal.   *See Sheffer v. Cottrell, Inc.*, 2009 WL 1231037, *3 (S.D. Ill.) (April 30, 2009); *McCall v. Scott*, 239 F.3d 808, 813 n.2 (6th Cir. 2001) ("the inclusion of an unserved resident defendant in the action does not defeat removal under 28 U.S.C. § 1441(b)."); *Spencer v. U.S. Dist. Court for Northern Dist. of Calif.*, 393 F.3d 867, 871 (9th Cir. 2004) (forum defendant rule does not apply if the removal is effected by an out-of-state defendant before any local defendant is served).

The Bayer Defendants removed this action on May 1, 2009 at 11:18 am (3:09-cv-20004 Doc. 29-1).   Plaintiffs served McKesson on May 1, 2009 at 1:50 pm (3:09-cv-20004 Doc. 29-2; 3:09-cv-20004 Doc. 18-1).   Accordingly, this action was removed before the forum defendant was served.   This fact, standing alone, is a sufficient ground for denying Plaintiff's motion to remand.

26

Further, the Court agrees that Plaintiff has failed to sufficiently allege that McKesson supplied the subject drugs and thus, pursuant to the principles discussed in *Jankins* and in Section II, *supra*, the Court finds that McKesson has been fraudulently joined (*See* 3:09-cv-20004 Doc. 1 pp. 10-11 ¶¶ 13-14 (the only allegations directed against McKesson specifically do not allege that McKesson supplied the subject drugs); 3:09-cv-20004 Doc. 1 pp. 6-26 (containing non-specific allegations directed against "Defendants")).   Because the Court is denying Plaintiffs motion to remand for the above reasons, it need not address the choice of law issue at this time.

The Court notes also notes that McKesson has filed a motion to dismiss (3:09-cv-20004 Doc. 22).   Plaintiff has not filed a responsive pleading. Before considering McKesson's motion to dismiss, the Court will give Plaintiff an opportunity to respond to the arguments raised therein.   In addition to responding to the arguments raised in McKesson's motion to dismiss, Plaintiff should address (1) the choice of law issue (i.e. whether the substantive law of California, Illinois, or some other state governs Plaintiff's claims) and (2) whether McKesson is subject to liability under the substantive law governing Plaintiff's claims.   This opportunity is not an invitation to re-argue the propriety of removal under the forum defendant rule; that ship has sailed.   *See* 28 U.S.C. § 1441 (b) (if a resident defendant is not both joined and served at the time of removal the forum defendant rule does not apply) (here McKesson was not properly joined or served at the time of removal).

27

For the reasons stated above, the Court **ORDERS** as follows:

1. Plaintiff's motion to **remand** to state court (**3:09-cv-20004 Doc. 17**) is **DENIED**.

2. Plaintiff has until October 18, 2010 to file a response to McKesson's pending motion to dismiss (3:09-cv-20004 Doc. 22).   The brief shall consist of no more than 15 pages (excluding signature page and/or certificate of service).   If Plaintiff does not file a brief by October 18, 2010, McKesson will be dismissed.

**C.**   **This Portion of the Decision Relates to:**

- ***Metzger et al. v. Bayer Corporation et al.,* 3:10-cv-20246-DRH-PMF**

- ***Milam v. Bayer Corporation et al.,* 3:10-cv-20245-DRH-PMF**

**1.**   **Background**

These actions were originally brought in San Francisco Superior Court against numerous Bayer entities (all non-California citizens) and McKesson (a citizen of California) (3:10-cv-20246 Doc. 9 p. 3; 3:10-20245 Doc. 20 p. 3).   None of the Plaintiffs are California citizens (See 3:10-cv-20246 Doc. 46 ¶¶ 3-13 (in this multi-plaintiff case, Plaintiffs Jennifer Metzger and Andrew Wheatley are citizens of Nevada, Plaintiffs Melinda K. Alcantara and Jonathan M. Alcantara are citizens of Oklahoma, Plaintiffs Cynthia D. Calhoun and Jason D. Calhoun are citizens of Georgia, Plaintiff Liz Morgan is a citizen of Georgia, and Plaintiff Barbara Romero is a citizen of Utah); 3:10-cv-20245 Doc. 1 p. 15 ¶ 2 (Plaintiff Milam is a citizen of

Tennessee)).   None of the Defendants is a citizen of Nevada, Oklahoma, Georgia, Utah, or Tennessee.

The Bayer Defendants removed each action to the Northern District of California based on diversity of citizenship (3:10-cv-20246 Doc. 1; 3:10-cv-20245 Doc. 1).   Plaintiffs' contend, in their Motions to Remand to State Court, that although complete diversity exists and the amount in controversy has been met, remand is warranted on the basis of the forum defendant rule (3:10-cv-20246 Doc. 9; 3:10-cv-20245 Doc. 14).   Specifically, Plaintiffs contend that McKesson was properly joined and served prior to removal and thus the forum defendant rule barred removal of the action.   *Id*.   The Bayer Defendants do not contest that McKesson was properly served prior to removal.   Instead, they argue that McKesson was fraudulently joined and therefore the forum defendant rule is inapplicable (3:10-cv-20246 Doc. 31; 3:10-cv-20245 Doc. 30).

With regard to fraudulent joinder, the Bayer Defendants, in their initial memorandum in opposition to Plaintiffs' motions to remand, raised the same arguments the Court considered in *Jankins*, (1) there is no reasonable probability that a pharmaceutical distributor could be held liable under *California* law and (2) Plaintiffs have failed to sufficiently plead that McKesson supplied the subject drugs (3:10-cv-20246 Doc.31; 3:10-cv-20245 Doc. 30).

On September 3, 2010, the Bayer Defendants filed a second memorandum in opposition to Plaintiffs' motions to remand arguing that remand should be denied because (1) the Complaints do not allege that McKesson supplied

29

the subject drugs (as to all Plaintiffs) and/or (2) the actions are governed by the laws

of the Plaintiffs' respective states of citizenship and the substantive governing laws

shield non-manufacturer suppliers from liability in product actions (with respect to

four of the Plaintiffs in *Metzger*, Cynthia D. Calhoun and Jason D. Calhoun who are

citizens of Georgia, Liz Morgan who is a citizen of Georgia, and Barbara Romero

who is a citizen of Utah (3:10-cv-20246 Doc. 48 § II(B)(1)(b), & (h); and with respect

to the sole Plaintiff in *Milam* who is a citizen of Tennessee (3:10-20245 Doc. 48 §

II(B)(1)(f)).

      **2.**    **Analysis**

      Plaintiffs make the following specific allegations with regard to

McKesson:

- *Metzger et al. v. Bayer Corporation et al.,* 3:10-cv-20246-DRH-PMF Doc. 46 ¶ 25

[McKesson] Was and is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at One Post Street, San Francisco, California 94104.   [McKesson] touts itself as, among other things, (1) the largest pharmaceutical distributor in North America distributing one-third of the medications used daily in North America, (2) the nation's leading health care information technology company, and (3) a provider of "decision support" software to help physicians determine the best possible clinical diagnosis and treatment plans for patients.   At all relevant times, [McKesson] conducted regular and sustained business in California by selling and distributing its products and services in California, and engaged in substantial commerce and business activity in the County of San Francisco.

- *Milam v. Bayer Corporation et al.*, 3:10-cv-20245-DRH-PMF Doc. 1 p. 19 ¶ 17

[McKesson] Was and is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at One Post Street, San Francisco, California 94104.   [McKesson] touts itself as, among other things, (1) the largest pharmaceutical distributor in North America distributing one-third of the medications used daily in North America, (2) the nation's leading health care information technology company, and (3) a provider of "decision support" software to help physicians determine the best possible clinical diagnosis and treatment plans for patients.   At all relevant times, [McKesson] conducted regular and sustained business in Tennessee and California by selling and distributing its products and services in Tennessee and California, and engaged in substantial commerce and business activity in the County of San Francisco.


These allegations do not sufficiently allege that McKesson supplied the pills that were ingested by the Plaintiffs.   In *Metzger*, Plaintiffs have alleged that McKesson is a major "pharmaceutical distributor" in North America and that McKesson "conducted regular and sustained business" and "distributed its products" in California.   First, there is no allegation that McKesson distributed YAZ or Yasmin; only an allegation that McKesson distributed pharmaceuticals. Second, as the Court explained in *Jankins*, alleging that McKesson is *a* distributor is not the same as alleging that McKesson is *the* distributor.   Finally, the allegation that McKesson distributed its product in California is particularly unhelpful where all of the Plaintiffs were domiciled in states other than California at the time of the alleged injuries.

The allegations in *Milam* are practically identical, the only difference being that the Plaintiff in *Milam* has additionally claimed that McKesson "conducted regular and sustained business" and "distributed its products" in both California and Tennessee.   Again, as the Court explained in *Jankins*, alleging that McKesson is *a* pharmaceutical distributor in the state where the plaintiff resides is not the same as alleging that McKesson is *the* distributor that provided the pills ingested by the plaintiff.

The remaining allegations in Plaintiffs' Complaints are directed against "Defendants" generally.   As the Court found in *Jankins*, such general allegations are not sufficient.   Accordingly, for the reasons discussed in the *Jankins* remand orders and in Section II *Supra*, the Court has no choice but to find that McKesson has been fraudulently joined.   The Court, therefore, need not resolve the choice of law issues at this time.

For the above reasons, the Court **ORDERS** as follows:

1.    The motion to **remand** in ***Metzger* (3:10-cv-20246 Doc. 9)** is **DENIED**.

2.    The motion to **remand** in ***Milam* (3:10-cv-20245 Doc. 14)** is **DENIED**.

32

**D.**    __This portion of the Decision relates to__:

*Camara et al. v. Bayer Corporation et al.*, 3:10-cv-20247-DRH-PMF

**1.    Background**

      This action was originally brought in the Superior Court of California for the County of Los Angeles against numerous Bayer entities and McKesson. Plaintiffs are citizens of California (Nadine Camara and Jennifer Wilkins), Arizona (Christine Davis), and Ohio (Michelle Cottrill and Jennifer Wilkins) (3:10-cv-20247 Doc. 1-1 ¶¶ 2-6).   None of the Bayer Defendants is a citizen of California, Arizona, or Ohio (3:10-cv-20247 Doc. 1 ¶¶ 16-21).   McKesson is a citizen of California (3:10-cv-20247 Doc. 1 ¶ 22).   The fact that McKesson is a citizen of California implicates the forum defendant rule (because McKesson is a citizen of the forum state) and raises questions with regard to complete diversity (because one or more Plaintiffs is a citizen of California).

      The Bayer Defendants contend that the citizenship of McKesson should be disregarded because McKesson has been fraudulently joined (3:10-cv-20247 Doc. 1 ¶ 6).   The Bayer Defendants initial motion in opposition to Plaintiffs' motion to remand raised the same fraudulent joinder arguments this Court considered in *Jankins*;   (1) Plaintiffs have failed to sufficiently plead that McKesson supplied the subject drugs and (2) There is no reasonable probability that a pharmaceutical distributor could be held liable under *California* law (3:10-cv-20247 Doc. 29 pp. 3-4).

33

On September 3, 2010, the Bayer Defendants filed a second memorandum in opposition to Plaintiffs' motions to remand arguing that remand should be denied because (1) the Complaints do not allege that McKesson supplied the subject drugs (as to all Plaintiffs) and/or (2) the claims brought by the Ohio Plaintiffs (Stephanie Dobbs and Michelle Cottrill) are governed by Ohio substantive law and Ohio substantive law shields non-manufacturer suppliers from liability in product actions (3:10-cv-20247 Doc. 42 § II(B)(1)(e)).

### 2. Allegations as to McKesson

Plaintiffs acknowledge that a majority of the allegations in their Complaint are stated generally against all Defendants (3:10-cv-20247 Doc. 22 p. 13). The following are the only allegations in Plaintiff's Complaint that are directed against McKesson specifically:

> Defendant [McKesson] is a Delaware Corporation with its principal place of business at One Post Street, San Francisco, California, 94104. Defendant McKesson Corporation is authorized to do business in the State of California and is engaged in substantial commerce and business activity in the County of Los Angeles.

(3:10-cv-20247 Doc. 1-1 ¶ 26).

> At all times relevant hereto, Defendant [McKesson] was engaged in the business of distributing researching, designing, developing, licensing, compounding, testing, producing, manufacturing, assembling, processing, packaging, inspecting, labeling, selling and/or warranting the COC PRODUCT[11] in the State of California.

---

[11] The "COC Product" is defined in the Complaint as the "combination oral contraceptives containing drosperinone and ethinyl estradiol, marketed and known as YAZ and Yasmin" (3:10-cv-20247 Doc. 1-1 ¶ 9).

(3:10-cv-20247 Doc. 1-1 ¶ 27).

> Defendant McKesson is, and at all times material to this action was, a corporation organized, existing and doing business under and by virtue of the laws of the State of Delaware, with its principle place of business in San Francisco, California.   McKesson is, and at all times material to this action was, authorized to do business, and was engaged in substantial commerce and business under the laws of the State of California.

(3:10-cv-20247 Doc. 1-1 ¶ 28).

For the reasons discussed in the *Jankins* remand orders and in Section II *Supra*, Plaintiffs' allegations as to McKesson are not sufficient.   Accordingly, the Court finds that McKesson has been fraudulently joined and Plaintiffs' motion to remand is therefore denied.

For the above reasons, the Court **ORDERS** as follows:

The motion to **remand** in ***Camara*** (3:10-cv-20247 Doc. 22) is **DENIED**.

**E.**   **This portion of the Decision relates to:**

***Rhodes v. Bayer Corporation et al.***, **3:10-cv-20333-DRH-PMF**

**1.**   **Background**

This action was originally brought in the Superior Court of California for the County of Kern against numerous Bayer entities (all non-California citizens) and McKesson (a California citizen) (3:10-cv-20333 Doc. 15 p. 6).   The Plaintiff is a citizen of California (3:10-cv-20333 Doc. 2-2 ¶¶ 1, 50; 3:10-cv-20333 Doc. 2 ¶ 9). The Bayer Defendants removed this action to the Eastern District of California

35

based on diversity of citizenship (3:10-cv-20333 Doc. 2 ¶ 2).   Pursuant to the
Removal, complete diversity exists because McKesson was fraudulently joined
(3:10-cv-20333 Doc. 2 ¶¶ 2,6).

Plaintiff contends, in her motion to remand, that McKesson was not
fraudulently joined and thus, because both Plaintiff and McKesson are citizens of
California, complete diversity does not exist (3:10-cv-20333 Doc. 15).   In their
removal, the Bayer Defendants raise the same fraudulent joinder arguments the
Court considered in *Jankins*; (1) Plaintiff has failed to sufficiently plead a cause of
action against McKesson and (2) there is no reasonable probability that a
pharmaceutical distributor could be held liable under California law
(3:10-cv-20333 Doc. 2 ¶¶ 20-28).   On September 3, 2010, the Bayer Defendants
filed a memorandum in opposition to Plaintiff's motion to remand arguing that
remand should be denied because the Complaint does not allege that McKesson
supplied the subject drugs (3:10-cv-20333 Doc. 30).   Thereafter, Plaintiff filed a
reply in support of her motion to remand arguing that 1) under California law,
Plaintiff need not plead that McKesson distributed the pills she ingested and 2)
other courts have not required that Plaintiffs plead that McKesson distributed the
subject pills (*See* 3:10-cv-20333 Doc. 35).

### 2.   Allegations as to McKesson

Plaintiff makes the following specific allegations with regard to McKesson:

Defendant [McKesson] was and is a corporation organized and existing
under the laws of the state of Delaware, with its principal place of
business at One Port Street, San Francisco, California 94104.

36

> [McKesson] was and is authorized to do business in the State of California and was engaged in substantial and continuous commerce and business activity in the County of Kern.

(3:10-cv-20333 Doc. 2-2 ¶ 11)

> At all times relevant hereto, Defendant [McKesson] was engaged in the business of researching, designing, developing, licensing, compounding, testing, producing, manufacturing, assembling, processing, packaging, inspecting, labeling, distributing, selling and/or warranting the Yasmin in the State of California.

(3:10-cv-20333 Doc. 2-2 ¶13).

These allegations do not sufficiently allege that McKesson supplied the pills that Plaintiff ingested.   The remaining allegations in Plaintiff's Complaint are generically directed at "Defendants" and are insufficient as well.   Accordingly, for the reasons discussed in the *Jankins* remand orders and in Section II *Supra*, the Court finds that McKesson has been fraudulently joined and Plaintiff's Motion to Remand to State Court is denied.

For the above reasons, the Court **ORDERS** as follows:

The motion to remand in ***Rhodes*** (3:10-cv-20333 Doc. 22) is **DENIED**.

**F.**   **This portion of the Decision relates to:**

***Sheehan et al v. Bayer Corporation et al.***, **3:10-cv-20331-DRH-PMF**

**1.**   **Background**

This action was originally brought in the Superior Court of California for the County of Orange against numerous Bayer entities (all non-California

citizens) and McKesson (a California citizen) (3:10-cv-20331 Doc. 8 p. 7).   The

Plaintiffs are citizens of California (3:10-cv-20331 Doc. 1 p. 2 ¶ 2).   The Bayer

Defendants removed this action to the Central District of California based on

diversity of citizenship (3:10-cv-20331 Doc. 1 p. 2 ¶ 2).   Pursuant to the Removal,

complete diversity exists because McKesson was fraudulently joined

(3:10-cv-20331 Doc. 1 p. 2 ¶ 2).

Plaintiffs contend that McKesson was not fraudulently joined and that

because both Plaintiffs and McKesson are citizens of California, complete diversity

does not exist (3:10-cv-20331 Doc. 8).   The Bayer Defendants respond, raising the

same arguments the Court considered in *Jankins*; (1) Plaintiffs have failed to

sufficiently plead a cause of action against McKesson and (2) there is no reasonable

probability that a pharmaceutical distributor could be held liable under California

law (3:10-cv-20331 Doc. 16).   Thereafter, Plaintiffs filed a reply in support of their

motion to remand arguing that 1) under California law, Plaintiffs need not plead

that McKesson distributed the subject pills and 2) other courts have not required

that Plaintiffs plead that McKesson distributed the subject pills (*See* 3:10-cv-20331

Doc. 35).

    **2.    Allegations as to McKesson**

Plaintiffs make the following specific allegations with regard to

McKesson:

> Defendant [McKesson] was and is a corporation organized and existing
> under the laws of the state of Delaware, with its principal place of
> business at One Port Street, San Francisco, California 94104.

> [McKesson] was and is authorized to do business in the State of California and was engaged in substantial and continuous commerce and business activity in the County of Orange.

(3:10-cv-20331 Doc. 1 p. 28 ¶ 11).

> At all times relevant hereto, Defendant [McKesson] was engaged in the business of researching, designing, developing, licensing, compounding, testing, producing, manufacturing, assembling, processing, packaging, inspecting, labeling, selling and/or warranting the Yasmin in the State of California.

(3:10-cv-20331 Doc. 1 p. 28 ¶ 13).

These allegations do not sufficiently allege that McKesson supplied the pills that the Plaintiffs ingested.   The remaining allegations in Plaintiffs' Complaint are generically directed against "Defendants" and are insufficient as well. Accordingly, for the reasons discussed in *Jankins* and in Section II *Supra*, the Court finds that McKesson has been fraudulently joined and Plaintiff's Motion to Remand to State Court is denied.

For the above reasons, the Court **ORDERS** as follows:

The motion to remand in ***Sheehan*** (3:10-cv-20331 Doc. 8) is **DENIED**.


**G.**   **This portion of the Decision relates to:**

***Schroeder, et al. v. Bayer Corporation, et al.*, 3:10-cv-20244**

**1.    Background**

This action was originally brought in the Superior Court of California for the County of San Francisco against numerous Bayer entities (none of the Bayer

39

entities is a California citizen or a citizen of a state in which a Plaintiff is a citizen) and McKesson (a citizen of California and Delaware) The Plaintiffs are citizens of California, Connecticut, New York, Illinois, and Texas (3:10-cv-20244 Doc. 1 p. 21-22 ¶¶ 2-15).   The Bayer Defendants removed this action to the Northern District of California based on diversity of citizenship (3:10-cv-20244 Doc. 1 p. 3 ¶ 9).   Pursuant to the Removal, complete diversity exists because McKesson was fraudulently joined (3:10-cv-20244 Doc. 1 pp. 5-9 ¶¶ 25-34).   The removal raises the same fraudulent joinder arguments the Court considered in *Jankins*: (1) Plaintiffs have failed to sufficiently plead a cause of action against McKesson and (2) there is no reasonable probability that a pharmaceutical distributor could be held liable under *California* law (3:10-cv-20244 Doc. 1 pp. 5-9 ¶¶ 25-34).   In their Motion to Remand, Plaintiffs contend that McKesson is a properly joined and served defendant and therefore, complete diversity does not exist (3:10-cv-20244 Doc. 9) (assessing the issue as to McKesson's liability under California law only).

On September 3, 2010, the Bayer Defendants filed a memorandum in opposition to Plaintiffs' motion to remand arguing that remand should be denied because (1) the Complaint does not allege that McKesson supplied the subject drugs (as to all Plaintiffs) and/or (2) the action is governed by the laws of Plaintiffs' respective states of citizenship and the governing substantive laws shield non-manufacturer suppliers from liability in product actions (as to the Illinois and Texas Plaintiffs only) (3:10-cv-20244 Doc. 35).   Thereafter some, but not all, Plaintiffs filed a notice of withdrawal of Plaintiffs' motion to remand (3:10-cv-20244

40

Doc. 36) (purporting to withdraw the motion to remand on behalf of the California, Connecticut, New York, and Illinois Plaintiffs but not on behalf of the Pennsylvania and Texas Plaintiffs).   On September 10, 2010 the parties filed a stipulation of dismissal as to McKesson for the claims brought by the California, Connecticut, New York, and Illinois Plaintiffs (3:10-cv-20244 Doc. 37).

Withdrawing the motion to remand and dismissing McKesson on behalf of the California, Connecticut, New York, and Illinois Plaintiffs will not resolve the jurisdictional issues present in this member action.   This member action would still involve Plaintiffs who are citizens of California and a defendant, McKesson, who is a citizen of California.   Accordingly, despite Plaintiffs' notice of withdrawal of motion to remand and stipulation of dismissal, the Court must evaluate whether the member action is subject to remand for lack of diversity.

### 2.    Sufficiency of the Pleadings

Plaintiffs make the following specific allegations with regard to McKesson:

> Defendant [McKesson] was and is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at One Post Street, San Francisco, California 94104. [McKesson] touts itself as, among other things, (1) the largest pharmaceutical distributor in North America distributing one-third of the medications used daily in North America, (2) the nation's leading health care information technology company, and (3) a provider of "decision support" software to help physicians determine the best possible clinical diagnosis and treatment plans for patients.   At all relevant times, Defendant [McKesson] conducted regular and sustained business in California by selling and distributing its products and services in California, and engaged in substantial commerce and business activity in the County of San Francisco.

(3:10-cv-20244 Doc. 1 p. 26 ¶ 27).

These allegations do not allege a sufficient causal connection.   Accordingly, for the reasons discussed in *Jankins* and in Section II *Supra*, the Court has no choice but to find that McKesson has been fraudulently joined and to deny the motion for remand.

   For the above reasons, the Court **ORDERS** as follows:

   The motion to remand in ***Schroeder*** (3:10-cv-20244 Doc. 22) is **DENIED.**

## IV.   CONCLUSION

   Under California pleading standards, a plaintiff must allege every fact that he or she is required to prove.   In a product action, under any substantive law, a plaintiff must establish a causal link between the defendant and the alleged harm. Thus, to plead a sufficient cause of action against McKesson Plaintiffs must allege that McKesson distributed, supplied, or was in some way responsible for the drugs the Plaintiffs ingested.   The Plaintiffs in the above captioned actions have completely failed to allege causation as to McKesson.   Moreover, Plaintiffs have not attempted to allege any alternate theory of causation.

42

Accordingly, there is no reasonable possibility that a California state court would find that the Complaints in the above captioned actions state a valid claim against McKesson.   Absent an allegation that McKesson supplied the subject drugs, the Court has no choice but to find that McKesson has been fraudulently joined.   Thus, the motions to remand pending in the above captioned actions are **DENIED.**



**SO ORDERED:**

/s/        *David R Herndon*

Chief Judge                                                    Date: October 1, 2010
United States District

43